IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **Doris Dabbs,** § | |
|     **Plaintiff,** § | |
| § | |
| **v.** § | **No. 3:11-CV-03145-BF** |
| § | |
| **Michael Astrue** § | |
| **Commissioner of Social Security,** § | |
|     **Defendant.** § | |

**MEMORANDUM OPINION AND ORDER**

This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Doris Dabbs ("Plaintiff") for Supplemental Security Income ("SSI") under Title II of the Social Security Act ("the Act"). The Court considered Plaintiff's Brief, filed on February 16, 2012, Defendant's Brief, filed on April 18, 2012, and Plaintiff's Reply Brief, filed on May 3, 2012. The Court reviewed the record in connection with the pleadings. For the following reasons, the final decision of the Commissioner is **Affirmed**.

**Background**[1]

**Procedural History**

Plaintiff filed an application for SSI on July 1, 2008. (Tr. 137.) Plaintiff claimed that she had been unable to work since December 31, 2005, as a result of disability due to arthritis, high blood pressure, and anxiety. (Tr. 122-28.) The Commissioner denied the claim on September 5, 2008, finding Plaintiff not disabled under the Act, and Plaintiff petitioned for reconsideration. (Tr.

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

81.) The Commissioner reviewed the case and on January 2, 2009, again denied the request for SSI. (Tr. 81-84, 87-89.) Plaintiff filed a timely request for a hearing in front of an Administrative Law Judge ("ALJ"). (Tr. 90.) The initial hearing, before ALJ Peri Collins, took place on August 10, 2009. (Tr. 30, 34-77.) Plaintiff appeared at the hearing and testified on her own behalf. (*Id*.) The ALJ also heard testimony from Karyl Kuttila, an impartial vocational expert ("VE"). The ALJ affirmed the Commissioner's decision on December 23, 2009, finding Plaintiff not disabled. (Tr. 21-30.)

**Plaintiff's Age, Education, and Work Experience**

Plaintiff was born on July 15, 1955. (Tr. 78.) She was 53 years old on her alleged disability onset date. Plaintiff attended public schools, but she dropped out before completing the ninth grade and never obtained a GED. (Tr. 40.) Plaintiff has had a number of unskilled, low-paying jobs. She most recently performed part-time work at a home health agency, where she helped care for an elderly woman. (Tr. 43-44,148-51.) Plaintiff has also worked for an auto auctioneer, showing cars where to park; at a retail outlet, keeping clothes in order; and in an office building, cleaning. (Tr. 144-51.) Nevertheless, the ALJ determined Plaintiff had no past substantial gainful activity. (Tr. 28.)

**Plaintiff's Medical Evidence**

Medical records show before and after the alleged disability onset date Plaintiff suffered from osteoarthritis of the knees, hypertension, depression, and substance abuse disorder. An examining physician at Parkland Health Hospital diagnosed Plaintiff with anxiety, hypertension, and arthritis on November 26, 2007. (Tr. 262-63.) Plaintiff returned to Parkland on March 21, 2008, with right leg pain. (Tr. 259-60.) An examining physician determined Plaintiff had arthritis

2

in her left knee. (*Id*.) The physician ordered a toxicology report, and Plaintiff tested positive for cocaine. (Tr. 265.)

A non-treating state agency medical consultant issued a residual functional capacity assessment ("RFC") on September 3, 2008. (Tr. 229-36.) The medical consultant noted Plaintiff could sit, stand, or walk for six hours in an eight hour day. (Tr. 230.) He determined Plaintiff's impairments limited her capacity to lift and carry to fifty pounds occasionally and twenty-five pounds frequently. (Tr. 230.) The medical consultant concluded that Plaintiff was not disabled.

On October 16, 2008, Plaintiff's legal representative requested an additional RFC opinion, which was completed by the Plaintiff's treating physician, Dr. Srivathanakul. (Tr. 303.) Dr. Srivathanakul stated that in an eight-hour workday, Plaintiff could sit, stand, or walk, and lie down or recline for only two hours. (Tr. 303.) He indicated those limitations were due to arthritis in her left knee. (Tr. 303.)  He noted Plaintiff could not lift or carry weight over 10 pounds, but Plaintiff could lift and carry up to ten pounds. (Tr. 303.) Dr. Srivathanakul determined Plaintiff could not perform repetitive action involving pushing and pulling, and he determined Plaintiff's knee arthritis would prevent her from bending, squatting, climbing, reaching up, and kneeling. (Tr. 304.) He stated that Plaintiff's pain was moderate and that she would need frequent rest periods during the day and frequent days off from work due to exacerbations of pain. (Tr. 305.) Dr. Srivathanakul stated that he expected the condition to last permanently. (Tr. 305.) He did not answer a question asking whether alcohol or drug abuse was a contributing factor to Plaintiff's inability to work. (Tr. 305.) In a medical report from October 2008, Dr. Srivathankul noted that Plaintiff said she was still using cocaine, but trying to quit. (Tr. 249.)

3

On December 8, 2008, psychologist Cindy Taylor examined Plaintiff for the first and only time. (Tr. 276.) Dr. Taylor noted Plaintiff was a poor informant who had trouble recalling dates. (*Id*.) Dr. Taylor determined Plaintiff was functioning in the low-average range of intelligence. (Tr. 280.) Plaintiff revealed to Dr. Taylor that she began using cocaine "about a year ago" and claimed she last used the substance in July or August 2008. (Tr. 277.) Plaintiff claimed she began using cocaine for pain relief only a couple times a month. (*Id*.) Dr. Taylor acknowledged Plaintiff's history of alcohol abuse. (*Id*.) She determined Plaintiff currently suffered from alcohol dependence in partial remission. (Tr. 281.) She also found Plaintiff had deficits in memory, orientation, and construction, which indicated the presence of mild dementia. (*Id*.) Dr. Taylor stated Plaintiff's condition was deteriorating, and concluded with her opinion that Plaintiff would be working if able. (*Id*.)

On December 23, 2008, a non-examining state agency medical consultant issued a psychiatric review and a mental RFC assessment. (Tr. 283-95, 296-300.) The reports were based on Plaintiff's alleged depression and substance abuse disorder. (Tr. 283, 286.) The consultant noted Plaintiff's cocaine abuse and opined that it was current. (Tr. 291.) He found Plaintiff experienced moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. (Tr. 293.) However, he found Plaintiff's condition only mildly restricted daily activities. (Tr. 294.) The medical consultant expressed his opinion that Plaintiff's allegations lack credibility. (Tr. 295.) He noted that Plaintiff often makes statements that conflict with the medical record. (*Id*.) For example, he noted that Plaintiff claimed she only drinks occasionally and no longer uses cocaine, but the evidence in the medical record conflicts with that claim. (*Id*.) Similarly, the medical consultant found no medical evidence to support Plaintiff's

4

allegation that she had suffered from two strokes. (Tr. 295.) He concluded that Plaintiff's allegations of disability were partially credible, but that she is not wholly compromised. (Tr. 295.) In his opinion, while Plaintiff was markedly limited in her ability to understand, remember, and carry out detailed instructions, Plaintiff retained the ability to remember and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact with co-workers, and respond to changes in work settings. (Tr. 299.)

On March 27, 2009, Plaintiff reported her psychological symptoms in a questionnaire for Dr. David Farris and later had a follow-up appointment. (Tr. 321.) Dr. Farris noted Plaintiff had symptoms of depression, anxiety, and psychosis. (*Id*.) Plaintiff stated her belief that she had suffered multiple strokes. (Tr. 323.) Dr. Farris suggested that a stroke would be a medical emergency, and Plaintiff indicated she would like to go to the emergency room. (*Id*.) Dr. Farris terminated his evaluation prematurely and sent Plaintiff to see Dr. Srivathanakul for a medical evaluation. (*Id*.) Dr. Farris scheduled a future appointment for Plaintiff with another psychiatrist, Dr. Antonio Roman. (*Id*.)

Dr. Roman examined Plaintiff for fifteen minutes on July 24, 2009 and diagnosed Plaintiff with permanent psychotic depression. (Tr. 336, 348, 355.) He noted Plaintiff was disheveled, guarded, paranoid, depressed, and anxious. (Tr. 355.) He found she suffered from multiple symptoms that characterize depression, which functionally limited Plaintiff's ability to maintain social functioning and to maintain concentration, persistence, and pace. He described Plaintiff as permanently disabled. (Tr. 340.) Dr. Roman acknowledged Plaintiff tested positive for cocaine in March 2008, but he noted Plaintiff tested negative for cocaine that November. (Tr. 341.)

5

**Plaintiff's Testimony at the Hearing**

Plaintiff testified on her own behalf at the hearing held on August 10, 2009. (Tr. 38-65.) Plaintiff testified that she is no longer able to work because of physical and mental impairments. (Tr. 46-48.) She identified her last employer, Angel's Home Health Agency, where she worked part-time for three months. (Tr. 43-44.) She testified that she later provided part-time care for her granddaughter. (Tr. 45-46.) She indicated that she lived with her daughter, and she rarely leaves the house. (Tr. 38-39, 52.) She stated that she sometimes goes out to eat with one of her daughters. (Tr. 52.) She testified that her legs and knees are in constant pain, aching and popping when she kneels. (Tr. 62-64.) She stated with her condition she can lift ten pounds regularly, but she can only stand for fifteen minutes. (Tr. 47-48.) She testified that she suffers from depression, hallucinations, and memory-loss. (Tr. 52-53.) She indicated she rarely sleeps. (Tr. 61.) She stated that her medications are not working. (Tr. 56-57.) She testified that she believed she suffered from two strokes. (Tr. 51.) Plaintiff also said she has problems doing things around the house. (Tr. 55.) Plaintiff testified that she was an alcoholic and used to drink a lot. (Tr. 57-58.) She testified that she had tried cocaine. (Tr. 58.) She indicated she last used cocaine in March 2008. (*Id*.)

**The Hearing**

A vocational expert ("VE"), Dr. Karyl Kuuttila, also testified at the hearing. (Tr. 65-74.) The VE stated that Plaintiff had no past substantial gainful activity or relevant work. (Tr. 66.) The ALJ asked the VE to consider a hypothetical individual. (*Id*.) The hypothetical person has Plaintiff's age and education, with no work experience. (*Id*.) The person can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand and walk six of eight hours, and can sit

6

six of eight hours with the option to stand and stretch intermittently. (*Id*.) The person cannot balance, crouch, crawl, or kneel, but can frequently stoop. (*Id*.) The hypothetical person cannot work in proximity to hazards, including driving, and they cannot work in temperature or weather extremes. (Tr. 66.) Further, this hypothetical person can have occasional contact with coworkers and supervisors, but only incidental contact with the public. (*Id.)* The hypothetical person's reasoning, math, and language would be 2-1-1. (*Id.*) When asked by the ALJ if there would be any work in the national economy for the hypothetical person, the VE answered in the affirmative. (66-67.) The VE testified the hypothetical person could perform light, unskilled work as a housekeeper/cleaner, hand packager, or garment sorter. (*Id*.) The ALJ then asked the VE to add to the hypothetical person frequent fingering on the dominant hand. (Tr. 68.) The VE stated though the number of available positions would decrease, the hypothetical person still met the requirements for all three jobs. (Tr. 67.) The VE cautioned that the person would not be able to do competitive work if she missed more than three days per month or ten minutes per day. (Tr. 68.) Upon cross-examination by Plaintiff's counsel, the VE added that if the person were ever unable to remember work-like procedures, concentrate on a regular basis, or interact with co-workers, she could not find competitive work. (Tr. 72-74.)

**The Decision**

The ALJ analyzed Plaintiff's claim pursuant to the familiar five-step sequential evaluation process.[1] On December 23, 2009, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (Tr. 90.) At step one, the ALJ determined Plaintiff has not engaged in substantial gainful

---

[1] (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work?  20 C.F.R. §§ 404.1520, 416.920.

activity since she applied for SSI. (Tr. 23.)  At step two, the ALJ found Plaintiff suffers from four severe impairments: osteoarthritis of the knees, hypertension, depression, and substance abuse disorder (Tr. 23.) At step three, the ALJ determined Plaintiff's impairments meet the disability criteria in section 12.04 (Affective Disorders) and 12.09 (Substance Abuse Disorders) of 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 23-24.) Specifically, the ALJ found Plaintiff suffers from depression and substance abuse disorder. (Tr. 24.) However, the ALJ found that, absent substance abuse, Plaintiff would not be disabled. (*Id*.)

      The ALJ conducted a detailed RFC assessment to determine if Plaintiff's impairments, absent drug and alcohol abuse, would meet the Appendix 1 criteria. (Tr. 24.) The ALJ followed a two-step process. (Tr. 26.) First, the ALJ evaluated whether Plaintiff suffered from an impairment that could reasonably be expected to produce the alleged symptoms. (*Id.*) Second, the ALJ evaluated whether that impairment would restrict Plaintiff's ability to do basic work activity. (*Id.*) The ALJ maintained that, absent substance abuse, Plaintiff's impairments could reasonably be expected to produce the alleged symptoms. (Tr. 26.) However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effect of those symptoms conflicted with the RFC. (*Id.*) The ALJ noted Plaintiff never followed up on appointments for her depression and reasoned that this contradicted Plaintiff's statements concerning the severity of her depression.  The ALJ then acknowledged Plaintiff's issues with substance abuse, but determined the impairment was not fully compromising. (*Id*.) Therefore, the ALJ concluded that Plaintiff's impairments, absent substances abuse, would not meet the Appendix 1 criteria.

      The ALJ next assessed Plaintiff's physical impairments, considering each alleged physical disability. (Tr. 25-28.) The ALJ determined that the medical evidence contradicted Plaintiff's

allegation of knee arthritis. (Tr. 26-27.)  The ALJ identified two pieces of conflicting evidence in the record: an x-ray of Plaintiff's knee showing it was in normal condition, and Plaintiff's failure to pursue further medical treatment on her knees. (*Id*.) The ALJ next assessed Plaintiff's hypertension and determined it would not be a medically determinable condition absent substance abuse. (Tr. 26.) The ALJ acknowledged that blood pressure tests revealed Plaintiff had abnormally high blood pressure. (Tr. 26-27). However, Plaintiff's blood pressure returned to normal levels after Plaintiff stopped using cocaine. (Tr. 27.) The ALJ next addressed Plaintiff's alleged strokes. (*Id*.) The ALJ disregarded Plaintiff's claim that she suffered two strokes. (*Id*.) She found her claim not credible because the medical records showed no evidence of a stroke. (*Id*.) The ALJ concluded that if Plaintiff stopped abusing drugs and alcohol she would have the ability to perform a limited range of light, unskilled labor. (*Id*.)

To justify her RFC assessment, the ALJ explained how she weighed the medical evidence. (Tr. 27-28.) She specifically cited Social Security Ruling 96-2, which states that controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported and not in conflict with other substantial evidence in the record.  The ALJ stressed that it is for the Commissioner to determine both RFC and whether Plaintiff is disabled or not disabled.

The ALJ assigned no weight to the medical statement completed by an unknown doctor on May 1, 2008, which stated Plaintiff has hypertension and anxiety. (Tr. 27-28.) The ALJ reasoned that the medical record contains no supporting details of the conditions or the length of that treating physician relationship. (*Id.*) The ALJ assigned little weight to the mental assessment conducted by Dr. Roman on July 24, 2009. (*Id*.) The ALJ reasoned that no genuine treating

9

relationship between Dr. Roman and Plaintiff had been established before Dr. Roman completed the assessment, for he completed the assessment after one fifteen minute appointment. (*Id*.) Moreover, the ALJ opined that Dr. Roman's opinion failed to address the effects of Plaintiff's substance abuse. The ALJ also determined that Dr. Srivathanakul's assessment of Plaintiff's RFC is not entitled to controlling weight because it is not supported by the medical evidence. (Tr. 28.) The ALJ found Dr. Srivathanakul's opinion fails to give any limits where there is evidence of a functional impairment.

After conducting that exhaustive step 3 analysis, at step 4 the ALJ determined that Plaintiff has no past relevant work. (Tr. 28.) At step 5, the ALJ determined that if the Plaintiff stopped abusing drugs and alcohol, there would be a significant number of jobs for her in the national economy. (Tr. 29.) Therefore, the ALJ concluded Plaintiff has not been disabled within the meaning of the Act at any time from the date of the application filing through the date of the decision. (*Id*.)

## **Standard of Review**

A disabled worker is entitled to social security benefits if she meets the Social Security Act's definition of disability. *Anthony v. Sullivan*, 954 F.2d 289, 292-93 (5th Cir. 1992). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R § 404.1505(a); *Anthony,* 954 F.2d at 292. "A physical or mental impairment is 'an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.'" *Wren v.*

*Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991)(citing 42 U.S.C. § 423(d)(3)). The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a); *Leggett,* 67 F.3d 558, 563–64. At the first step the Commissioner considers work activity. Any individual who is working and engaging in substantial gainful activity will be found not disabled regardless of medical findings. 20 C.F.R. § 404.1520(b). At the second step, the Commissioner considers the medical severity of the impairment(s). 20 C.F.R. § 404.1520(c). An individual who does not have a "severe impairment" will be found not disabled. *Stone v. Heckler*, 752 F.2d 1099 (1985). An impairment is not severe only when it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. *Id.* However, subjective complaints of pain must be corroborated by objective medical evidence. *Chambliss v. Massanari*, 269 F.3d 520 (2001).

At step three, the Commissioner again considers medical severity. 20 C.F.R. § 404.1520(d). An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors. *Id*. At the fourth step, the Commissioner assesses the claimant's RFC and past relevant work. 20 C.F.R. § 404.1520(e). A finding of not disabled is required if an individual is capable of performing work she has done in the past. *Id.* If an individual's impairment precludes her from performing her past work, or if the claimant has no past relevant work, the Commissioner proceeds to step five. *Id.* At step five, the Commissioner assesses claimant's RFC in relation to her age, education, and work experience to determine whether Plaintiff can perform any other work. 20 C.F.R. § 404.1520(f). A finding of "not disabled" is required if the Commissioner determines the claimant can make an adjustment to other work. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). That

11

determination may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

A finding at any point in the sequence that a claimant is disabled or is not disabled is conclusive and terminates the five-step analysis. *Wren*, 925 F.2d at 125-26. On the first four steps of the analysis the claimant has the burden to prove she is disabled. Id. If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner to show that there is work in the national economy the claimant is capable of doing. *Id*.

Under the Social Security Act, alcohol or drug abuse precludes a finding of disability if it is a contributing factor material to the disability determination. 20 C.F.R. § 404.1535; *See Brown v. Apfel,* 192 F.3d 492, 498 (5th Cir. 1987). If a claimant is found to be disabled, but there is evidence of substance abuse, the ALJ must determine whether the claimant would be found disabled if she stopped using alcohol or drugs. *Id*. The key factor the Commissioner examines in determining whether drug addiction or alcoholism is material is whether the claimant would remain disabled in the absence of the substance abuse. *Id*. If the claimant's remaining limitations would not be disabling, drug or alcohol use is considered to be a contributing factor material to disability and a finding of not disabled is required. *Id*; *Dyer v. Astrue*, No. 3-08-CV-1408-BD, 201 WL 304242, 4 (N.D. Tex. Jan. 26, 2010).

On review, the Commissioner's determination is afforded great deference. *Leggett,* 67 F.3d at 564.. Judicial review of the Commissioner's findings is limited to two determinations: (1) whether substantial evidence supports the decision; and (2) whether the correct legal standards were applied in reaching the decision. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If

the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id*. Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Anthony v. Davis,* 954 F.2d 289, 295 (5th Cir. 1992). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Newton v. Apfel,* 209 F.3d 448, 453 (2000) (citations omitted).

## Issues

Whether substantial evidence supports the ALJ's determination that substance abuse was a contributing factor material to Plaintiff's disability.

Whether the ALJ properly weighed the medical opinion evidence in the record.

## Analysis

### Whether substantial evidence supports the ALJ's determination that substance abuse was a contributing factor material to Plaintiff's disability.

Plaintiff contends that substantial evidence does not support the ALJ's determination that substance abuse was a contributing factor material to the disability determination. (Pl. Br. at 14). This Court concludes substantial evidence supports the ALJ's determination.

Under the Social Security Act, substance abuse precludes a finding of disability if it is a contributing factor material to the disability determination. 20 C.F.R.§ 404.1535. If there is evidence of substance abuse, the ALJ must determine whether the claimant would be found disabled if she stopped using alcohol or drugs. *Id*. The burden is on the Plaintiff to prove that her

13

remaining impairments would be disabling. *Id.*; *Brown v. Apfel,* 192 F.3d 492, 498 (5th Cir. 1987). If the Plaintiff cannot show her remaining limitations would be disabling, a finding of not disabled is required. *Id.*

Here, the ALJ found Plaintiff disabled because her impairments met section 12.04 (depression) and 12.09 (substance abuse) of 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ identified Plaintiff's limitations resulting from the impairments: (1) moderate restrictions in daily living activities; (2) marked difficulties in social functioning; and (3) marked difficulties in concentration, persistence, or pace. (Tr. 24.) But the ALJ also found evidence that Plaintiff abused alcohol and cocaine. (*Id.*) Therefore, the ALJ conducted a RFC assessment reflecting the degree of Plaintiff's limitations, absent substance abuse. The ALJ's assessment relied on the medical record and the testimony of the VE, including the VE's responses to the hypothetical proposed by the ALJ. The ALJ noted the evidence supported a finding that, absent substance abuse, Plaintiff would have: (1) mild restrictions in her daily activities; (2) mild restrictions in social functioning; and (3) moderate restrictions in concentration, persistence, and pace. (Tr. 24-25.) The ALJ found Plaintiff would have the RFC to perform a limited range of light, unskilled labor. The ALJ concluded that absent substance abuse, Plaintiff's impairments would not meet the criteria in those sections.

The ALJ then determined that Plaintiff's exertional limitations, absent substance abuse, do not indicate she is disabled. First, the ALJ determined Plaintiff's symptoms of hypertension went away after Plaintiff stopped using cocaine. The ALJ assessed the results of blood pressure tests and found that Plaintiff's blood pressure decreased to normal levels after Plaintiff stopped

14

abusing cocaine. The evidence thus supports the ALJ's determination that Plaintiff's drug abuse contributed to her hypertension symptoms.

The ALJ next determined that the medical record does not support Plaintiff's allegations of osteoarthritis. When assessing the alleged impairment, the ALJ emphasized Plaintiff's lack of credibility. The ALJ noted that Plaintiff's testimony conflicted with the evidence. First, the ALJ cited the x-ray of Plaintiff's knee, which did not reveal arthritis. Second, the ALJ stated that Plaintiff's failure to pursue medical treatment for an allegedly chronic impairment contradicts her allegations. The ALJ also disregarded Plaintiff's claim that she had suffered two strokes. Plaintiff reported that she got hot, sweaty, and lost the ability to speak. The ALJ found Plaintiff's claim not credible because there was no evidence of strokes in the medical report. Subjective complaints of pain must be corroborated by objective medical evidence. *Chambliss*, 269 F.3d 520.

The ALJ concluded that although Plaintiff would have mild restrictions in daily living activities if she stopped using alcohol and drugs, Plaintiff would retain the ability to work at various occupations. The ALJ cited the VE's testimony that Plaintiff would be capable of adjusting to work that exists in significant numbers in the national economy. Specifically, the ALJ noted Plaintiff would meet the requirements necessary to work as a housekeeper/cleaner, hand packager, and garment sorter.

Substantial evidence exists in the record to support the ALJ's conclusion that substance abuse was a contributing factor material to Plaintiff's disability. Thus, this Court finds that the ALJ properly determined that Plaintiff would not be found disabled absent her use of drugs or alcohol.

**Whether the ALJ properly weighed the medical opinion evidence in the record.**

In a related argument, Plaintiff contends the ALJ prejudiced Plaintiff's case by rejecting examining physician opinions in favor of non-examining expert opinions. (Pl's Br.at 17). Plaintiff maintains this resulted in a RFC assessment not supported by substantial evidence. (*Id.*) This Court concludes the ALJ properly weighed the medical evidence in the record.

When confronted with inconsistent evidence, the ALJ weighs the relevant evidence. 20 C.F.R. § 404.1520(b). The statute provides the ALJ with guidelines. Generally, the opinion of a treating physician is to be given greater weight. The assumption underlying this rationale is that treating physicians are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s)." 20 C.F.R. § 404.1527(c). Thus, more weight is given to a doctor with a long history of treating a particular patient. However, longitudinal history by itself is not sufficient. To be given controlling weight, the treating physician's opinion must be well-supported by medical techniques and consistent with the medical record. *Id.* Even where an opinion is given controlling weight, some issues, such as dispositive administrative findings, are for the Commissioner. *Id*. The ALJ may discount or disregard entirely the treating physician's opinion for good cause shown. *Brown v. Apfel*, 192 F.3d 492 (5th Cir. 1999). Thus, a medical opinion that a claimant is "disabled" is not controlling.

Here, there are conflicts in the medical record. Plaintiff correctly states that more weight is generally given to the opinion of a treating physician. Plaintiff believes the assessments of Dr. Taylor, Dr. Roman, and Dr. Farris ought to weigh heavily in the RFC assessment. However, the basic rationale behind the presumption for treating physicians is not present here. The ALJ found that no physician treated Plaintiff long enough, or frequently enough, to provide a detailed,

longitudinal picture of Plaintiff's impairments.

The ALJ reviewed all the medical evidence but did not believe any determination warranted controlling weight. The ALJ provided rationale for each weighing decision. The ALJ noted that Dr. Taylor examined Plaintiff only once, without reviewing Plaintiff's medical record before the examination. The ALJ similarly discounted Dr. Roman's assessment. Dr. Roman completed a checkbox questionnaire after examining Plaintiff for fifteen minutes. In that questionnaire, he summarily concluded Plaintiff was permanently disabled. The ALJ assigned less weight to that opinion because it lacked a longitudinal history that would provide Dr. Roman with greater insight into the Plaintiff's condition. Additionally, the ALJ found Dr. Roman's conclusion inconsistent with the evidence in the medical record. Moreover, Dr. Roman's conclusion that Plaintiff is permanently disabled is disregarded because opinions on issues of dispositive administrative findings are for the Commissioner.

In conjunction with her review of the examining physician records, the ALJ reviewed the assessments of the state-agency officials. The ALJ noted that the opinions of non-treating physicians do not as a general matter deserve as much weight, but she stated that they do deserve some weight, "particularly where there exists a number of other reasons to reach similar conclusions." (Tr. 28.) Those reasons include Plaintiff's lack of credibility when describing her impairments and symptoms, Plaintiff's conflicting statements about her drug use, and medical evidence that corroborates the state-agency assessment.

Greater weight is given to the opinions of treating physicians because they are more likely to provide a detailed, longitudinal picture of a patient's medical impairment. Here, the ALJ determined that no physician treated Plaintiff long enough or frequently enough to form detailed

17

conclusions about her medical history. In making that determination, the ALJ reviewed all of the medical testimony and supplied proper reasoning for each evidentiary-weighing decision. Because the ALJ considered all evidence in the medical record, setting forth valid reasons for giving some opinions diminished weight, this Court cannot say that the ALJ erred. *See Chambliss*, 269 F.3d at 523. Therefore, the Court finds that the ALJ properly weighed the medical evidence.

### Conclusion:

For the foregoing reasons, the final decision of the Commissioner is AFFIRMED and Plaintiff's Complaint is dismissed with prejudice.

So ORDERED, June 20, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE